36651. McLENDON, Executor *v.* McLENDON *et al.*

CARLISLE, J. 1. " 'Courts of ordinary have authority to exercise original, exclusive, and general jurisdiction of the following subject-matters: . . . The granting of letters testamentary, and of administration, and the repeal or *revocation* of the same. . . All controversies in relation to the right of executorship or administration.' Code of 1933, § 24-1901 (2, 3). 'Whenever the ordinary knows, *or is informed by any person having any interest in the estate,* that the administrator

. . . *for any reason* . . . *is unfit* for the trust reposed in him,' after citation and hearing, 'the ordinary may, in his discretion, revoke the letters of administration.' § 113-1229. This section is applicable to executors as well as administrators. § 113-1101. The word 'unfit' as used in the statute is not limited to physical, mental, or moral conditions, but is sufficiently broad to include a legal disqualification under the will or otherwise." *Bruce* v. *Fogarty,* 53 *Ga. App.* 443 (1) (186 S. E. 468).

2. "On appeal to the superior court from the court of ordinary in a proceeding to remove an administrator [or executor], the discretion which by law has been vested in the ordinary is to be exercised by the jury. *Moody* v. *Moody,* 29 *Ga.* 519, 521; *Davis* v. *Davis,* 33 *Ga. App.* 628 (127 S. E. 779)." *Stanley* v. *Spell,* 46 *Ga. App.* 91 (2) (166 S. E. 669).

3. "In the absence of any authority conferred by the will, an executor has no power, by virtue of his appointment as such, to borrow money and bind the estate. . ." *O'Kelly* v. *McGinnis,* 141 *Ga.* 379 (81 S. E. 197). .

4. Under an application of the foregoing principles of law, the trial court did not err in overruling the general demurrer to the petition or the motion for a new trial based solely upon the general grounds, as the petition is replete with charges that the defendant violated the terms of the will, violated the law, and was otherwise unfit to carry out the trust reposed in him; and, on the trial, the plaintiffs established the fact that the defendant violated the terms of the will with reference to the testator's grave, violated the law and the will by binding the estate for borrowed money, established that the defendant was in extremely poor health, and established many other facts such as to authorize the jury to find that he was unfit to perform the trust reposed in him.

5. None of the special demurrers is meritorious, and even if it could be said that one or more of these demurrers was meritorious, it does not, under the facts of this case, appear that the trial court's overruling these special demurrers was harmful or injurious to the defendant. See in this connection, *Teal* v. *Equitable Loan Co.,* 43 *Ga. App.* 673 (159 S. E. 904).

*Judgment affirmed. Gardner, P. J., and Townsend, J., concur.*

Decided June 27, 1957—Rehearing denied July 11, 1957.

*R. M. Daley, Carl E. Westmoreland*, for plaintiff in error.
*Jones & Douglas, Paul J. Jones, Jr.*, contra.

Mrs. E. G. McLendon and Barbara McLendon, by and through her duly appointed guardian, Mrs. E. G. McLendon, brought an action in the Superior Court of Laurens County, to remove E. A. McLendon as executor of the last will and testament of E. G. McLendon. The material allegations of the petition are substantially these: (1) The defendant is a resident of Bibb County, Georgia, and qualified as executor of the last will and testament of E. G. McLendon in the Court of Ordinary of Laurens County on August 31, 1954, in accordance with Item 5 of the will. A certified copy of the will, a certified copy of the order admitting the will to record in solemn form, and a certified copy of the defendant's letters testamentary are attached to and made a part of the petition. (2) The plaintiffs are the wife and daughter of the deceased, are the sole surviving heirs at law of the deceased, and the sole beneficiaries under his will. (3) Item 5 of the will relieved the defendant as executor from making any bond or return to any court, and the defendant is administering the estate without having given bond, without making any return of his actings and doings, and without rendering an accounting showing the receipts and disbursements of funds belonging to the estate which have come through his hands. (4) The deceased owed no debts of any kind whatsoever, and at the time of his death was possessed of real and personal property of a value in excess of $50,000. A list of the properties is attached to and made a part of the petition. The plaintiff's husband, the deceased, went to great pains to provide for the health, comfort, and security of the plaintiffs, his wife and daughter, after his death, but the defendant has shown, from the very day of his qualification as executor, a hostile and belligerent attitude toward the plaintiffs. Rather than conducting the affairs of the estate in a manner as would be most conducive to the welfare of the plaintiffs, the defendant has administered the estate in a manner that best promotes his own interests. Some of the defendant's actions, as will hereinafter be shown, seem to have been done for

no other conceivable purpose other than to cause the plaintiffs unnecessary hardship, embarrassment and annoyance. The defendant has failed to carry out the provisions of the will and is wasting and dissipating the assets of the estate. He is insolvent and is promoting his own interest to the injury of the plaintiffs, and has entered into negotiations to dispose of valuable real estate belonging to the estate, without any necessity for such action, and for these and other reasons, he is wholly unfit for the trust that has been reposed in him. (5) The defendant's acts of mismanagement, waste, and acts showing him to be unfit for the trust reposed in him are as follows: (a) E. G. McLendon died on Tuesday, August 24, 1954, in Dublin, Georgia, and even before the plaintiffs could bury him, the defendant began annoying and harassing the plaintiffs to go to the vault in the Citizens & Southern Bank to get the will. At the time of Mr. E. G. McLendon's death, Mrs. McLendon maintained a joint safety deposit box with him in the Citizens & Southern Bank, where they kept valuable papers including bonds, savings account certificates, shares of stock, and insurance policies, some of which belonged to Mr. McLendon, some of which belonged to Mrs. McLendon, and some of which belonged to Barbara McLendon, and others which belonged jointly to Mr. and Mrs. McLendon, such as government bonds. Mrs. McLendon, accompanied by the defendant, went to the bank on Friday after her husband had been buried on Wednesday. Upon arriving, she handed the key to the safety deposit box over to one of the bank employees, and after the safety deposit box was opened and the will removed and delivered to the defendant, the bank employee, instead of returning the key to the plaintiff, handed the key to the defendant. Mrs. McLendon then demanded of the defendant the return of the key. He replied: "The law will not permit me to give you this key." The defendant has never returned her key, and has taken full charge of all the valuables in the safety deposit box, including the properties belonging to both the plaintiffs. On the following Tuesday, one week after Mr. McLendon's death, the defendant came to the plaintiffs' home and had in his possession a $500 United States Government bond which belonged to Mrs. McLendon and which the defendant had removed

from the safety deposit box. Taking advantage of the fact that Mrs. McLendon was in a highly emotional state of mind, still suffering from the grief brought on by her husband's death, the defendant, nevertheless, attempted and induced Mrs. McLendon to indorse the bond, stating that the money was needed to pay Mr. McLendon's funeral expenses. The bond belonged exclusively to Mrs. McLendon in her own right and was no part of the property of the estate. Mrs. McLendon would have been willing to pay the expenses of her husband's funeral had it been necessary, but after she had indorsed the bond she instantly realized that there was far more than enough money belonging to the estate to pay the funeral expenses and that her personal funds were not needed. She immediately contacted the bank and (her?) attorneys, and although the bond had been cashed, she was able to secure its return. The defendant acted in bad faith in retaining the key to Mrs. McLendon's safety deposit box and in refusing to return it to her deprived her of her lawful right to the possession of her properties. The defendant acted in bad faith in inducing Mrs. McLendon to indorse her bond over to him and in misrepresenting to her that the money was needed to pay her husband's funeral expenses. (b) The defendant pledged certain assets of the estate for a loan in the amount of $1,100, when and after he had attempted to deprive Mrs. McLendon of her $500 bond. Mrs. McLendon was later advised that this money was borrowed for the purpose of paying her husband's funeral expenses. There was absolutely no necessity for the defendant's action, as there was over $1,000 in a checking account belonging to Mr. McLendon at the time of his death in the Farmers & Merchants Bank, and the defendant took charge of this, together with the savings certificates and other cash. The pledging of the assets of the estate for the purpose of borrowing money was unnecessary, was not authorized by any provision of the will, was contrary to law, and was a waste of the assets in paying out unnecessary interest charges and other fees. (c) Item 3 of the will provides: "I direct that all of the rents, issues and profits accruing to or from my four houses and lots in Dublin, Georgia, to be paid over by my executor to my wife for the monthly living expenses of herself and daughter, Barbara." Despite this

provision of the will, the defendant refused to turn over the monthly rentals, or any part thereof, to the plaintiffs. The plaintiffs were compelled to borrow money to meet their living expenses because of this arbitrary and capricious action on the part of the defendant, and were forced to employ an attorney at a cost to them of $150 in order to compel the defendant to turn over the monthly rentals to them in accordance with the terms of the will. In addition, instead of collecting the rents and managing the property as contemplated by the testator, the defendant turned the houses over to a local real-estate man who was to receive a fee and a commission from the monthly rentals, and this additional expense was wholly unnecessary. The payment of this commission by the defendant was a violation of the terms of the will, was a violation of law in delegating the defendant executor's duties to another, and this added expense was an unlawful waste of assets of the estate. (d) Item 1 of the will provides: "I desire and direct that my body be buried in a Christian-like manner in keeping with my circumstances in life, as may be directed by my wife." In accordance with this provision of the will, Mrs. McLendon had her husband buried and planned to have a suitable monument and tombstone of the plaintiffs' choice placed on the grave, in accordance with the provisions of the will. However, some weeks after her husband was buried, the plaintiffs were shocked to discover that the defendant had wilfully, and with utter disregard of the right and feelings of the plaintiffs, caused a hideous looking monument and tombstone to be erected over the grave. This tombstone was placed on the grave without the plaintiffs' permission, consent, or desire and at a cost to the estate of $1,000, or other large sums. The tombstone was purchased by the defendant with funds of the estate from a brother who is a tombstone and monument salesman by trade. The price paid for the tombstone was excessive, a waste of the assets of the estate, unauthorized and contrary to the terms of the will, contrary to law, and an unlawful invasion of the rights of the plaintiffs. (e) On October 11, 1954, the defendant, as executor, assented to a portion of the property devised in the will to the plaintiffs. A copy of the assent is attached to the petition. The property devised and to which the defendant as-

sented was the four houses and lots referred to in the will, the residence of the testator, and his automobile. The assent was given by the defendant after he had refused to turn over the rents of the houses to the plaintiffs for their living expenses in accordance with the terms of the will and the plaintiffs had threatened to apply for a year's support out of the estate. The day following the transfer of the property, the defendant canceled the fire insurance policy on the testator's residence, although the premiums were paid up for five more years, receiving therefrom a substantial refund, and he also canceled the liability insurance on the testator's automobile. The defendant did not notify the plaintiffs that he had taken such action. Several months elapsed during which time the property was not protected by insurance, which fact the plaintiffs did not know, and the defendant thereby deliberately exposed the plaintiffs to the risk of serious financial loss amounting to thousands of dollars. This action was contrary to the express terms of the will and a manifestation of the hostility and indifference to the welfare of the plaintiffs that the defendant has displayed since the day of his qualification as executor. (f) At the time of the testator's death, he was the owner of a 1945 model Ford pick-up truck which was located at the home of the plaintiffs. The plaintiffs used this truck for some two months in going to and from their farm and in hauling produce until about October 15, 1954, at which time they lent it to Lonnie Bracewell, who farms the plaintiffs' property, to be used and afterwards delivered to J. L. Brown. Later, when the plaintiffs demanded the truck from Brown, he refused to deliver the truck to them saying he was holding it for the defendant and under the defendant's instructions. The plaintiffs then hired attorneys and sued out a possessory warrant and regained possession of the truck under a judgment of a justice of the peace. The defendant employed an attorney to represent Brown, filed a petition for certiorari to the Superior Court of Laurens County, which court, on May 11, 1955, denied the petition for certiorari and ordered the property delivered to the plaintiffs. A copy of this judgment is attached to and made a part of the petition. This arbitrary and capricious action of the defendant, without reason or justification, deprived the plain-

tiffs of the use of the truck for a period of six months and caused enormous storage charges to accrue. The cost to the plaintiffs of the litigation, the court costs, the attorney's fees, and the storage charges which were paid by the defendant from the assets of the estate, far exceeded the actual value of the truck. The defendant acted in bad faith in attempting to deprive the plaintiffs of the possession of the truck which had been left in their possession by the testator, and the defendant was guilty of gross mismanagement and dissipating the assets of the estate in needless, frivolous and fruitless litigation instituted and carried on for no other purpose than to injure and spite the plaintiffs. (g) At the time of the testator's death and for a number of years prior thereto, he had operated farms in Laurens County and had contracted for their operation with share-croppers. At the time of his death, he was engaged in the harvesting of his crops but had not sold any of them. When the defendant qualified as executor he, almost immediately, sold cotton of the value of over $1,800 and hogs and cows of the value of over $2,700. The testator owed no debts whatsoever of any kind at his death and his farming operations, as well as other business, were conducted strictly on a cash basis. Nearly a year has elapsed since the defendant sold almost $5,000 worth of livestock and farm produce belonging to the estate, and although there were no debts, he has failed to turn over to or account to the plaintiffs for a single penny of this money. The defendant is insolvent and was relieved by the terms of the will from giving bond and has not given any bond. The plaintiffs, consequently, have no protection of any kind. Item 4 of the will provides: "All taxes, insurance premiums and repairs shall be paid by my executor out of the income from the property of my estate." The defendant not only canceled the insurance on the house mentioned above, he even refused and still refuses to apply the income and properties which he has received from the property of the estate for the payment of taxes and insurance as provided under the terms of the will. (h) The defendant, as provided by law, applied to the court of ordinary for permission to continue the farming operations of the testator for the calendar year of 1955 on a share-cropper basis on the grounds that

sufficient income could not be obtained by renting the premises so as to enable him to carry out the provisions of the will. Farming is at best a very hazardous and risky venture requiring the outlay of considerable capital and close and careful supervision. The defendant is a resident of another county, living some 60 miles away, and is unable to give the farms the necessary supervision except by constantly traveling back and forth at a prohibitive expense to the estate. The plaintiffs objected to the defendant's application to operate the farms on such basis at the time it was made, urging him to rent the farms and not to risk thousands of dollars belonging to the estate in attempting to farm the lands. The defendant ignored the pleas and objections of the plaintiffs and has since expended hundreds of dollars belonging to the estate and incurred hundreds of dollars of debts binding on the estate in this venture. The defendant's decision to operate the farms rather than to rent them, considering the risk involved of loss to the estate without reasonable certainty of a gain commensurate with the risk involved was motivated by a desire for personal gain rather than for the best interest of the estate. The law provides that an executor may receive 2½ percent of all money coming into his hands and 2½ percent of all money paid out, and regardless of how many thousands of dollars the estate might lose in this farming operation, the defendant's commission as executor would be many times more than it would have been if he had elected to rent the farms. (i) Item 4 of the will provides: "Should any emergencies arise whereby it becomes necessary to sell any part of my real estate, then I empower my executor to make such sale either publicly or privately without the necessity of first obtaining the order of any court authorizing such sale." The defendant has threatened and has entered into negotiations to sell certain portions of the estate despite the fact that no emergency has arisen. The defendant first entered into negotiations with Elbert Mullis and later with Luther Bracewell to sell certain real estate. As to the last mentioned transaction, the plaintiffs were once again compelled to employ attorneys to protect their interest and to obtain a temporary writ of injunction in the Superior Court of Bibb County on June 6, 1955, restraining the defendant from

disposing of any of the property belonging to the estate. A copy of this order is attached to and made a part of the petition. The attempted sale of the real estate was without justification and contrary to law, because nothing approaching an emergency had arisen which would authorize the defendant to sell the lands of the estate unless the defendant's mismanagement has created such an emergency. (j) The deceased was the owner of seven shares of the capital stock of the Coastal States Life Insurance Company of a market of $215 per share. The defendant obtained one share of this stock (No. 6042) when he took charge of the safety deposit box mentioned above. The other six shares were at the home of the plaintiffs at the time of the testator's death. Although the will made no disposition of these shares of stock other than that portion of Item 5 of the will which provides: "The rest and residue of my property not herein disposed of, I desire to be divided equally between my wife and daughter to each alike," the defendant, nevertheless, attempted to gain possession of these six shares of stock by described devious means. The plaintiffs were able to block this move through their attorneys. The defendant then attempted to employ an attorney to sue the plaintiffs to recover the stock. The defendant acted in bad faith in attempting to deprive the plaintiffs of this stock when it was needed for the purpose of administration and his action was solely to injure the plaintiffs, deprive them of the dividends, and for the purpose of receiving a commission as executor, or for other reasons. (6) The defendant is in poor health and is in critical physical condition having suffered a severe heart attack on June 26, 1955, and is confined in the Laurens County Hospital until July 16th. After this time, due to the seriousness of his condition, he has been advised by his physician that he must remain at his home in Macon for a period of five to six months, during which time he is not to exert himself in the least and he has been forbidden even to operate an automobile. At this time of the year and for the next five or six months, the farms of the estate will require close and careful supervision which they are not now receiving and which they will not receive as the defendant is unable to continue to operate them, and he will continue for some time to be physically unable

to manage and supervise the farms. Many of the acts of mismanagement and waste which the defendant has been shown to have committed were in large measure brought on by the defendant's poor health. The defendant is, has been, and will continue to be physically unable to attend to the affairs of the estate, and the estate is without management at this time because of the defendant's incapacity and will be without management for many months and years to come unless the defendant be removed and an administrator be appointed. The estate is suffering loss because it is not being managed, and will continue to sustain losses unless an administrator is appointed to take charge of the affairs of the estate.

The defendant filed his general and special demurrers and answer generally denying the allegations of the plaintiff's petition. The grounds of the defendant's special demurrers to the plaintiff's petition are as follows:

"(3) Defendant demurs sepecially to paragraph four of the petition for the reason that same is argumentative, expresses opinions only, and there are no allegations therein to support such conclusions or opinions.

"(4) Defendant demurs specially to paragraph five of said petition as follows:

"(a) To subparagraph 'a' of said paragraph for the reason that said subparagraph does not set forth or allege any act which would authorize the removal of this defendant, as executor aforesaid.

"(b) Defendant demurs specially to subparagraph 'b' of said paragraph five because said subparagraph is argumentative, expresses conclusions of the pleader, and there are no allegations therein authorizing such conclusions.

"(c) Specially to subparagraph 'c' for the reason that no allegations therein represent any illegal or unauthorized acts.

"(d) Specially to subparagraph 'd' because there is no allegation therein that this defendant, as executor, as aforesaid did not have the legal right to purchase the tombstone therein referred to, nor that the purchase therefor was for a price not in keeping with the financial condition of the estate.

"(e) Specially to subparagraph 'e' for the reason that the facts

therein alleged do not authorize the removal of defendant, as executor, for the further reason that it affirmatively appears that the acts therein complained of were committed after the property referred to in said subparagraph had been turned over to the plaintiff, Mrs. E. G. MeLendon, and was in her possession and control, and for the further reason that the conclusions of the pleader are not authorized by any alleged facts.

"(f) Specially to subparagraph 'f' for the reason that from the allegations therein contained it affirmatively appears that the personal property therein described was owned by E. G. McLendon at the time of his death, and that defendant, as executor, was legally entitled thereto.

"(g) Specially to subparagraph 'g' for the reason that it is not set forth in said subparagraph to whom defendant sold the cotton, or the hogs and cows, nor is it therein alleged to whom or when he sold the livestock. And, for the further reason that said subparagraph represents only the conclusion of the pleader.

"(h) Specially to subparagraph 'h' for the reason that it affirmatively appears therein that the acts and things referred to in said subparagraph were done after this defendant obtained an order of the Court of Ordinary, of Laurens County, Georgia, authorizing such acts.

"(i) Specially to subparagraph 'i' for the reason that said subparagraph represents conclusion of the pleader, is entirely argumentative and without allegations of fact to support such.

"(j) Specially to subparagraph 'j' for the reason that it affirmatively appears therein that this defendant, as executor, was legally entitled to the possession and control of the shares of capital stock therein referred to."

By consent the case was appealed to the Superior Court of Laurens County. The defendant's demurrers both general and special were overruled and error is assigned upon that judgment. On the trial of the case, the jury found in favor of the plaintiffs and the court entered a judgment removing the defendant as executor of the will. The defendant's motion for new trial, based solely upon the general grounds, was denied and error is assigned on that judgment.